Good afternoon, your honors. May it please the court. Dennis Price for the appellant. I intend to reserve four minutes for rebuttal, if I may. Tester litigation, which has been explicitly approved by this court, was described by the district court as a perversion. The legal conclusions that followed from that were contaminated by discredited case law and legal theories, and the district court decision puts at risk the enforcement mechanisms of the ADA that order to fulfill the intents of Congress. There are really two main issues on this appeal. First, the district court essentially required an extra element not found in the statute and then found that Mr. Langer didn't need it. And second, the district court misconstrued what is meant by a place of public accommodation in the statute. So turning to the elements of the case, Mr. Langer might start with the threshold issue of jurisdiction and standing because I see that on page 25 of the ruling, the district court said that there was standing based on encountering a barrier on the date of the first visit. But then he has a long footnote saying that, you know, he's doubtful and make some findings there about future. But as I understand the way that ADA works, and you'll correct me if I'm wrong, it's perspective relief. And so the past encounter isn't sufficient to establish standing, there needs to be sufficient showing of standing as to the future. Am I wrong on that? Yes and no, Your Honor. So there are two ways in the Ninth Circuit to establish standing under the ADA. The first would be someone who has an intent to return to a location and they have knowledge of that barrier and that would be good enough. That's somebody who's never even been there, but maybe a friend tells them, hey, you're not gonna be able to go to this place, so they cancel their hotel room. And then they know that they're not gonna be able to be there. And so they need to have some sort of intention to return to the business in order to have standing. However, in the Ninth Circuit, the Pitikern versus HQ case and the Creek case was recognized that the deterrent effect doctrine is good enough. And that says that if a person with a disability encounters a violation of the ADA, they're not required to, you know, have a definite date that they're going to return because they have ongoing standing because of their knowledge of that barrier. It would be nonsensical for them to have to come back and keep encountering that barrier. And that would violate the no futile gesture doctrine that's incorporated into the ADA's black letter. In other words, it's sufficient for article three standing. I would return if the barrier were not there. Yes, your honor. But the findings of the district court in the long footnote on page 25 seem to suggest he didn't think that that was met here. He says this requires proving not only knowledge of the barriers, but also intent to return. And then he says there's four factors and plaintiff failed to present any evidence on any of those and says that the plaintiff stated he intended to return, but he finds the testimony not credible. Yes, your honor. He did find that. However, he also found standing on the not despite that and said, you know, reluctantly found standing based solely on the encounter. And that seems wrong when the statute only has perspective relief. And so there has to be something that covers the perspective aspect. And he made findings that there was no perspective. He didn't believe him. He didn't he didn't introduce any evidence other than his own testimony. I didn't believe his testimony. Well, I mean, he also had tried to adopt the Harris factors to come to that conclusion. And this which essentially ignores any future visits, it says that any visit that happens during the litigation we should ignore as irrelevant to whether or not you intended to get to return. The district court didn't disbelieve Mr. Langer that he had returned to the business. He disbelieved that Mr. Langer intended to go to the business to buy lobster. But there was there was no dispute as to whether or not he had done it. The district court merely said that's not good enough. Your reason for being there is what's important. And in the Creek case, and as plain as can be in a header, it says motivation is irrelevant. There was no doubt. And the court didn't distrust Mr. Langer having been there in the first place or having gone back. It distrusted his motivation for doing so. And that's because Mr. Langer is a tester plaintiff. He's always been a tester plaintiff for quite some time. This particular court is familiar with his cases. And Mr. Langer doesn't hide that fact. This business happened to have been fairly close to his business, to his home, and happened to have something that he actually would have an interest in returning to. Mr. Price, let me interject a question. My understanding of the district court's ruling was that he relied upon the fact that the plaintiff was a serial litigant as part of his reasoning to find the litigant not credible. And I thought that particular ruling was flatly contrary to a Ninth Circuit case called DeLille, where I thought we said that the prior history as a serial litigant could not be considered on credibility. Am I right? You're absolutely right, Your Honor. The court did that. And I think the best way of looking at how the court was thinking on that is back in the order on the motion in Lemonnier, where the court recognized DeLille and then ignored DeLille. Effectively said, we're going to consider litigation history for the purposes of standing, despite the fact that's not to do. And I think the reason for that, having done a number of these cases, is that there's a slight, I don't know, gray area in the language of DeLille, where after rejecting the district court's determination of credibility, it leaves the door open that says that you can do it, but only if you're very careful. And I think an awful lot of district courts have looked at that loophole and said, I'm being careful, therefore this is an okay thing to do. And I think the inflammatory language that was used about this case being a perversion and citing to overturn precedent, basically dictate overturned case law and looking at a statute that wasn't passed by Congress to justify it, showed that there was an intention to use this for an improper purpose. There's a belief that what Mr. Langer was doing was wrong. And this court has said very clearly in the Creek case that Tester standing is not in fact wrong. And so using his litigation history against him to say that he doesn't have proper standing here, or that there's a misbelief about whether or not his intent to return is genuine based on his prior litigation history, which is First Amendment protected activity, First Amendment. I don't read DeLille as establishing the kind of, you know, it's not an evidentiary privilege that you can't be crossed or questioned about the significance of litigation history. I mean, you could imagine an extreme example, if you file, you know, 5000 suits a year, and you claim, I want to go back to all 5000 of these. I mean, at some point, it's not credible that you know, and you don't have enough time to go to all these places. Now, DeLille, if they were being crossed on a particular place in Reading, which didn't go to Reading very often, she went to Santa Barbara a lot. And so that was, it seems a little bit more fact bound. So why isn't it appropriate? I mean, are the numbers of suits here approaching a level where it's like you really go to that many places a year? Is that an legitimate factor if we approach that? Or is it not? I don't think it is legitimate, Your Honor. I think Mr. Langer went to the business, it was uncontroverted that he went to the business. And at least in this case, the business was in his hometown, and he had been back since, but the court disputed that his reason for going back was legitimate. I think when we open the door to using First Amendment protected conduct, to undermine the standing under Article Three, we've essentially taken the knees out from the Constitution. If somebody has a First Amendment right to litigate, and then you tell them that use of that right will be used against them in future cases, I don't know what the First Amendment means anymore at that point. These are legitimate cases. They're recognized by Congress, they're recognized by the Ninth Circuit, and they're protected by the First Amendment. So if using the Second Amendment too many times by having too many guns was used to prohibit owning another gun, I don't think any court in the land would allow that to stand. But only here, only because of using something that's unsavory, is having too many lawsuits, is that considered legitimate? And I mean, we might have a situation where you get to the point where just, you know, credibility is completely impossible. You know, somebody's going to another state that they don't routinely go to. But those facts aren't in front of us here. And I think leaving that door open on DeLille has effectively damaged the intention of DeLille, and that's to protect litigation history from being used against people that are bringing legitimate lawsuits. Because here, you know, DeLille and also... Can I interrupt for just a minute? Is it sufficient under the statute to bring a cause of action under the ADA that the plaintiff or the tester would drive to the location solely in order to find the violation? That is to say, does the person actually need to want to go to the lobster shop to buy a lobster? Yes, Your Honor. I'm going to equivocate a little bit because there's a... Because want has two meanings. It can be their intention and their motive. Creek says their motive for going doesn't matter. They effectively need to go there in the same manner that someone else would go there that might go as a customer. But this court recognized in Creek that there's not a customer requirement. And Congress intentionally left that out because other parts of the ADA have that, this part of Article Three does not. And so Congress said, you don't need that. All you need to do is be impacted by that barrier. And that has a concrete relationship between what was intended to be prevented. And I think if Creek is meant to be given, it's what it stands for. We have to say that, yes, going there for the purpose of looking for barriers that your motive is looking for a barrier, that's legitimate as long as you're going there and with the same intentions as somebody else. So if we take someone who is like Mr. Langer, a tester, he goes to quite a few locations, he finds quite a few violations or what he thinks of as violations. In order for him to plausibly say, I would come back again, what does he have to do? Does he just have to say, well, listen, I'll make the same route I did and I'll go visit all 3,000 of them and I'll spend two weeks doing it. This all sounds a little artificial. I understand that, Your Honor, but that's what Congress passed. There's not an implementing agency. It's intended to be prosecuted by individual plaintiffs. And serial litigation has been recognized for a very long time by this court as the only way to further that promise. I mean, being a being a plaintiff is not an entertaining thing for people to do. It's your motives are consistently in question. And effectively, if you get rid of the ability for serial litigants to make California or other states more compliant, you effectively get rid of the ADA. It's substantially under enforced in places that do not have the type of protections that exist here. And so I think it would be a very big mistake to curb back Creek when what Creek was doing was only putting forth the promise of Congress. So, Mr. Price, if I may interject here, do you want to reserve some time for rebuttal? I would like to reserve the balance, Your Honor. Thank you. Okay. So, Mr. Hanine. Good afternoon, Your Honor. May it please the court, Sam Hanine for the appellees. Your Honor, there's just now been a lot of discussion about standing and I would point out to the court that the district court did, in fact, find that there was standing. So whatever those arguments were about, the court was wrong in considering the prior litigation history. It's really irrelevant because the court did find that he did have standing. But didn't the court find that he was not credible? Well, that's a different inquiry. I don't think the lilt says that you can't consider the prior litigation history as an aspect of the credibility determination. Just simply for the purposes of determining standing, perhaps you couldn't do it. It doesn't mean that you necessarily have to believe the plaintiff when he alleges an evidence to indicate that that's untrue. And what does Creech say when it says tester standing? Is it okay that someone can be a tester? Okay. So tester standing is one aspect of it, but it also goes on to say that plaintiff's injury is imminent, including whether a plaintiff suing under the ADA was likely to actually visit the complaint of business. And that's at page 1100 of that case. My perspective on this is that the crux of the issue on appeal is whether or not there was substantial evidence to support the trial court's finding in favor of the defendants. And that finding was primarily that the parking lot was not a place of public accommodation. That was based on the lease, Mr. Kaiser's testimony, and Mr. Taylor's testimony didn't include any kind of testimony, for example, saying that, oh yeah, customers parked here all the time. What proximity to the date of this actual visit was a prior customer allowed to park there by Mr. Taylor, who did not have the authority or the legal right to allow any non-tenant to park in that lot. If I can interrupt on this question now that we are getting to the merits, it seems to me that Mr. Langer doesn't need to show that this is a place of public accommodation. He does need to show that it's a facility attached to the place of public accommodation, which may actually be your argument. We're saying, well, you know, this really isn't used as a parking lot regularly for the lobster shop. Is that really your argument? Whether we call it a facility or a place of public accommodation, that it's just not used that way or not used that way enough? Well, it's a completely separate location. They may be that Mr. Taylor leased a place of public accommodation that included the parking lot. The parking lot was leased to Mr. Taylor solely as to parking space number one, and police specifically said not for any guests. Does the record show that a lot of the customers for the lobster shop actually used that parking place? No, it doesn't. All there is is that Mr. Taylor had allowed a customer or two. There was no specific number, but that he had allowed customers, if you will, to park in that lot. I looked at the sign that said lobster shop and parking. That sure looks like a sign that says you can park here. Somebody said it looks like an arrow, but I had trouble seeing an arrow. Well, there's a sign in front of his storefront, right in front of his door, that says lobster shop. That doesn't indicate, nor is that even dispositive of whether or not it's a place of public accommodation. Say, for example, I'll try a hypothetical here. Let's say, for example, I lease, I'm the owner of a warehouse and there's a parking lot behind the warehouse, and I lease the warehouse to the tenant, and in front of the storefront where they sell items. But the warehouse is tied to the parking lot, and the parking lot is for employee use only. Does the fact that there's a storefront in front of the warehouse automatically turn the parking lot into a place of public accommodation? I don't see how the tenant... Counsel, if I can interject here. I'm viewing the legal issue along the lines Judge Fletcher was, that the question is not whether the parking lot is a place of public accommodation, but whether it's a facility that the lobster store is providing. Okay, I see what you're saying, Your Honor. So, again, I don't think that whether or not the lobster store allowed a customer to park there made it subject to the ADA. Even if they had allowed someone to park there, that's not with the consent of the landlord. That's not part of the lease. Is that relevant to the ADA claim, though? Isn't that... Maybe you have an indemnity or breach of contract claim against the owner of a lobster shop, but if the lobster shop does that in running it and allows people to park there, and it doesn't have the required handicapped space, why isn't that a violation of the ADA? Well, they didn't have the right. It was not theirs to allow customers to park there. But I didn't think we had to look at the lease conditions of the store to know whether or not it's violating the ADA. I mean, that may determine who pays the liability or who has the liability, but why doesn't that establish a violation? Well, if you have a lease and the lease is for a place of public accommodation, that's one thing. And if you have a parking lot that you have leased to someone, and that parking lot is a tenant-only parking lot, that doesn't convert the parking lot into a place of public accommodation simply because without the landlord's consent, they allowed someone to park there. Counsel, what if... Again, I'm focused on whether it's a facility of the store, but is there an issue of fact? Is there an issue of fact on which a hearing had to be held and findings made concerning the extent to which Lobster Store customers tried to use that lot? If 90% of the Lobster Store customers used that lot and they had no problem using it, and only Mr. Langer, because he's in a ramp van, can't exit there, wouldn't that be a problem? No, I go back to the question of, well, the ADA says that you're liable if you lease a place of public accommodation, whether you're excluding in the lease the responsibility of the landlord or distinguishing between the responsibilities of the two parties, but ultimately, if you're not leasing a place of public accommodation, then it's not subject to the ADA. Okay, thank you, counsel. Well, and I also think that... I want to address briefly the issue of the award of costs. I actually went back and looked at the opinion, and I see what the court said is that the defendants, the appellees are the prevailing party, so there hasn't yet been a determination of the right to so I don't think that the judgment should be reversed based on the finding that the defendants were the prevailing parties, which they were. They prevailed on the claim. Didn't the district court award attorney fees without making the finding that the Ninth Circuit precedent requires about the conduct of the plaintiffs? The court did not award attorney's fees. There was a motion that was brought for attorney's fees, and the court declined to rule on that in the ruling in this appeal. But as I recall, it did award costs in the district court, just not attorney's fees. Well, I don't think so, your honor. I know at first glance it looks like that, but what the court said was that the defendants are the prevailing party, and then it cited some cases which talked about an award of attorney's fees. So it didn't actually reach that issue. So in your view, as you read what happened in the district court, there's not even an award of costs? That's correct, your honor. But I might read it differently. But I gather, if you're saying there's been no award of costs, I gather no money's changed hands based on an award of cost. Is that right? That's correct, your honor. There's been no determination on the motion for attorney's fees. It's sort of held in abeyance. No, I'm specifically talking costs, not attorney's fees. And no money's changed hands with respect to costs? That's what you're talking about? No, your honor. Okay. No. I don't think I have anything further unless the court has any questions, your honor. Any questions? No, thank you. Okay, I have none, counsel. The only thing I did want to clarify is I want to make sure I understand your understanding of district court's ruling. Because as I understand it, no place of public accommodation finding in the conclusions of law rests on incorporating the lease restrictions into it. Because I look at the statement of facts on page three, and the court finds the lobster shop offered parking to its number one was not a handicapped parking space. So it finds as a fact it was offered to customers. But then on the public accommodation says, to the extent plaintiff was an invitee of the lobster shop, the lobster shop only had the authority to invite him into the areas which had control under pursuant to the lease agreement. Or in other words, the storefront of the lobster shop or arguably parking space one, even though inviting customers to park in the space violated the lease agreement. And then he says, because he never entered the lobster storefront or parked in the space, he never entered the area in which he was invited. And it lacked the authority to invite customers into the space that was not leased to him under the lease agreement. So am I reading this correctly that he's incorporating the restrictions of a lease agreement and finding it's not a public accommodation or is it something else? I understood the court to be saying that it was a combination of the lease and the testimony and evidence presented to the court. It was not a place of public accommodation. So even though he found that that customers were invited to use parking space one, it still was not a place of public accommodation because it was not leased to the lobster shop as a place of public accommodation. That is the law. So it does turn on the fact that it violated the lease. Well, I think it's, that's an important factor and as well, the fact that Mr. Kaiser never consented to allow customers of the lobster shop to park in the parking lot. Let's say for example, I have a business premises and I lease it to somebody and I have a parking lot next door that's not leased to that person just because they allowed someone to park in my that doesn't turn it into a place of public accommodation. It was not leased to them. Oh, it's the same thing here. You just have, it's combined in one lease that you have storefront and the parking lot, but one way or the other, the tenant was never authorized to allow customers to park in the other, in the parking lot. Otherwise you'd have to say that anytime there's an unauthorized use by a tenant to allow someone to park in a parking lot that that automatically binds the landlord to turn that parking lot into a place of public accommodation. And like I said earlier, there was never any testimony or other evidence presented to show that at the time that Mr. Langer visited that customers had been going into that parking lot on any specified number of occasions. What if it was five years before the last customer parked there? Does that mean that this is still a place of public accommodation? And by logical extension, you would have to say that if it ever happened that a customer parked there, that's been converted into a place of public accommodation, whether or not it was consented to by the landlord, whether or not you had the right to do that under the lease. And that just doesn't make sense. It exposes property owners to liability that is far beyond what they can reasonably expect to have simply because a tenant takes it upon himself to do something that they're not legally entitled to do. Well, thank you for your argument. I think we do have the position of a billion here. Mr. Price, you had a small amount of rebuttal time. Yes, thank you, your honors. I'd like to speak a little bit about the merits. I do think there may be a hesitation to treat whether or not this was a place of public accommodation, or one of the benefits of a place of public accommodation is a semantic difference. And it's not because once you are a place of public accommodation, you're obligated to not discriminate against people with disabilities. So even if you have a temporary thing, commonly, this comes up in bathrooms, where a business won't have a compliant bathroom, but they'll let some of their customer use them until they find that they've got a customer with a disability. And then they say, well, no, no, no, no, no, no, not for customers. That's what happened here. There was a sign, it's in the brief, and it doesn't just say lobster, it says parking. There's an arrow on it that's pointing right at the parking spot. There's some dispute about which parking spot is pointing out, but it's pointing at a parking spot. And the record shows not only that Mr. Taylor allowed his customers to use it, but that the landlord was aware of it being done, because I guess he chastised him a little bit about it, but he never prevented him from doing it. And that information is on pages 151 and 152 of the record. So under the Boddison case in the Ninth Circuit here, the consent of the landlord doesn't matter. You can't contract away your liability. But even if we were going to try to create a defense where a completely absentee landlord who had this happen without their knowledge could avail liability, that's not what happened here. This was just a landlord who didn't want to do what was necessary to become compliant. And so he allowed his tenant to, we probably wanted to continue to get rent from, to allow that parking to be used. And the idea that somebody with a disability should be denied access to it simply because of a lease agreement that he's not a party to, well, that's just simply not what the law says. Finally, I want to go back to the standing argument. There's a suggestion that the lills should be cabined off, and we only prevent litigation history from coming in when we're talking about standing, but we can bring it all back in for the merits. And to which I'd say, I mean, what would even be the point anymore? You would essentially be inviting somebody into the door of the courthouse saying, you're more than welcome to come in, but you can never win. And I mean, that's really no different than what my clients face all the time when they go to a business where there's a ramp, but then they get under the door and there are stairs. We would effectively just be constructing stairs to legitimate litigation when it's First Amendment protected activity that they're doing that's been happening, not just with awareness of Congress, but it was intention of Congress when the ADA was passed. They knew that private litigation would happen. It has happened. And it's been recognized, not that it's a bad thing, but it's a necessary thing and an effective thing. And so we can't allow that this decision to effectively undermine the entire intention of the ADA. So I would ask that the court reverse and enter judgment in favor of Mr. Langer as all of the necessary findings of fact and conclusions of law after the extraneous findings are extruded would support that finding. Thank you. Thank you, Mr. Price. Well, I want to thank Mr. Price and Mr. Dine for their advocacy, which is a big help to us. We appreciate it. And the Langer case will now be submitted and will issue a ruling in due course. And that our argument is closed and our arguments for the days are for the whole day is completed and for the week. So the court will adjourn.
judges: FLETCHER, GOULD, COLLINS